# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK KACHKAR, | Civil No. 3:20-cv-1941 |
| Petitioner | (Judge Mariani) |
| v. | |
| J.L. JAMISON, WARDEN,[1] | |
| Respondent | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Jack Kachkar ("Kachkar"), a federal inmate confined at the Federal Correctional Institution, Allenwood-Medium, in White Deer, Pennsylvania ("FCI-Allenwood"). Kachkar requests that the Court overturn the Bureau of Prisons' ("BOP") decision to deny his request for early compassionate release and to serve the remainder of his sentence on home confinement based on COVID-19 concerns. For the reasons set forth below, the Court will deny the petition.

---

[1] Pursuant to 28 U.S.C. § 2243, the proper respondent in a habeas action is "the person having custody of the person detained." Therefore, the Clerk of Court will be directed to substitute J.L. Jamison, Warden of FCI-Allenwood, as the Respondent in this action.

I.   **Background**

   A.   **The BOP's Response to COVID-19**

To mitigate the spread of COVID-19, the BOP has modified its operations nationally. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "BOP COVID-19 Modified Operations Plan" hyperlink) (last accessed June 9, 2021). These modified operations are to provide for limited inmate movement in order to "prevent congregate gathering and maximize social distancing." *Id.* The BOP has implemented enhanced health screenings of staff at all locations. *Id.* Moreover, all newly admitted inmates are screened for COVID-19, including a symptom screen, temperature check, and an approved viral PCR test. *Id.* Inmates who are asymptomatic and/or test positive are placed in medical isolation; inmates who are asymptomatic and test negative are placed in quarantine. *Id.* Inmates remain in isolation until they test negative or are cleared by medical staff. *Id.* All inmates are tested again before transfer to a new facility. *Id.*

The BOP is also requiring that contractor access be restricted to those performing essential services, religious worship services, and necessary maintenance. *Id.* All contractors "must undergo a COVID-19 screening and temperature check prior to entry." *Id.* All volunteer visits have been suspended "unless approved by the Deputy Director of the BOP." *Id.* Inmate movement "in small numbers" is authorized for commissary, laundry, showers three (3) times per week, and telephone and TRULINCS access. *Id.*

### B.     Use of Home Confinement by the BOP

The BOP has exclusive discretion to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(a). Pursuant to this authority, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*

On March 26, 2020, the Attorney General issued a Memorandum encouraging the BOP to prioritize home confinement, as appropriate, in response to the COVID-19 pandemic. *See Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed June 9, 2021). To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:" (1) the age and vulnerability of the inmate to COVID-19, in accordance with Centers for Disease Control and Prevention ("CDC") guidelines; (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate "has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public

safety"; and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community." *Id.*

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was implemented, authorizing the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19 pandemic. CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). On April 3, 2020, the Attorney General issued a Memorandum authorizing the Director of the BOP to maximize the use of home confinement for appropriate inmates held at facilities where the Director determines COVID-19 has materially affected operations. *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, https://www.justice.gov/file/1266661/download (last accessed June 9, 2021). This Memorandum increased the number of inmates to be assessed for home confinement and directed that the BOP prioritize the most vulnerable inmates at the most affected facilities. *Id.* The Memorandum stressed that the BOP should "continue making the careful, individualized determinations BOP makes in the typical case" to remain faithful to its duty to protect the public. *Id.* As of June 9, 2021, the BOP has 7,119 inmates on home confinement, with a total number of 26,549 inmates being placed on home confinement from March 26, 2020 to the present. *COVID-19 Home Confinement Information*, https://www.bop.gov/coronavirus (last accessed June 9, 2021).

**C.     USP-Lewisburg's Response to COVID-19**

As of November 20, 2020, there were zero (0) inmate COVID cases at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), and two (2) staff cases. (Doc. 22-1, pp. 40-41, Declaration of Jennifer Knepper, Attorney Advisor at USP-Lewisburg ("Knepper Decl."), ¶ 5). Kachkar tested negative for COVID on October 22, 2020. *Id.* USP-Lewisburg is taking proactive, preventative steps to protect inmates and staff against the spread of COVID-19 in its facilities, which includes extensive testing and an ample testing supply. *Id.* Only limited group gathering is permissible, with attention to social distancing as much as possible, which still facilitating inmate access to the commissary, laundry, showers, telephone, and computers. *Id.* BOP has also severely limited the movement of inmates and detainees among its facilities. *Id.* All staff and inmates are screened for a temperature exceeding 100.4 degrees and overt respiratory symptoms, and issued appropriate face coverings, which they are required to wear when in public areas where social distancing cannot be achieved. *Id.* ¶ 6. Inmates who are symptomatic or have a temperature are immediately isolated and COVID-19 tested using the Abbott ID NOW COVID-19 test. *Id.* A POSITIVE Abbott ID test result for a symptomatic inmate does not require confirmation with a commercial PCR nasal swab test. *Id.* Symptomatic inmates whose Abbott test is NEGATIVE require confirmatory PCR lab testing. *Id.* Another specimen is collected and sent out for commercial PCR lab testing. *Id.* Until the confirmation commercial PCR test results are known, the symptomatic patient remains in medical isolation—but separate from

symptomatic patients whose Abbott test was positive. *Id.* Symptomatic inmates remain in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

When a staff or inmate case of COVID-19 is identified at an institution, contact tracing of both inmates and staff is expeditiously performed. *Id.* ¶ 7. All inmates identified as close contacts of the index case are assessed for symptoms and tested using either the Abbott ID NOW test or a commercial PCR test. *Id.* Symptomatic contacts are tested and placed in medical isolation. *Id.* Asymptomatic contacts are tested and placed into exposure quarantine. *Id.* Because COVID-19 is very contagious and may be spread by asymptomatic as well as symptomatic individuals, expanded testing of all inmates in an entire housing unit is considered if a positive case exists, particularly if the unit has open sleeping areas (rather than cells with solid walls and doors) or common areas where inmates have close contact. *Id.* All inmate intakes, release, and transfers are COVID tested and a quarantine test-in/test-out strategy is used for all inmates being admitted to and discharged from any type of quarantine. *Id.* ¶ 8. Regardless of the test result, all new BOP admissions/intakes are placed in a full 14-day quarantine. *Id.* Inmates who spend an extended time in an emergency department or crowded waiting area, reside overnight in the community or alternative setting including hospitalization or furlough; work release, or attend a court appearance, are tested upon return. *Id.* ¶ 9. Inmates from different units do not commingle and have not for the duration of the COVID-19 modified operations. *Id.* ¶ 10.

Similarly, staff are ordinarily assigned to a specific post to prevent unnecessary intermingling and potential cross-contamination. *Id.* BOP has taken other steps to limit access to its facilities and to reduce the spread of COVID-19. *Id.*

### D. Facts Regarding Kachkar

Kachkar is serving a 360-month term of imprisonment imposed by the United States District Court for the Southern District of Florida for Wire Fraud Affecting a Financial Institution. *Id.* ¶ 3; Doc. 22-1, pp. 43-45, Public Information Inmate Data. Kachkar began serving his sentence on October 16, 2019. *Id.* His projected good conduct time release date is April 23, 2042. *Id.* On June 26, 2020, Kachkar was individually and comprehensively reviewed under the five factors of 18 U.S.C. § 3621(b), 18 U.S.C. § 3624(c)(2), the CARES Act, and Attorney General Barr Memorandums. *Id.* ¶ 4. Kachkar was determined to not be appropriate for home confinement based on a MEDIUM Security Classification and because (at the time of the review) he only served approximately 14.7% of his imposed federal term and was greater than 18 months from his projected good conduct time release date. *Id.*

At the time Kachkar filed the instant habeas petition, he was housed at USP-Lewisburg. Kachkar has since been transferred from USP-Lewisburg to FCI-Allenwood. (Doc. 34).

## II. Discussion

Respondent asserts that Kachkar's § 2241 petition should be denied because: (1) BOP decisions concerning home confinement are not subject to judicial review; and, (2) Kachkar cannot establish any constitutional violations.[2] (Doc. 22). The Court will address each argument in turn.

### A. Home Confinement Request[3]

The Court cannot grant Kachkar's request for home confinement because "the CARES Act provides the discretion for determining early home confinement release solely to the BOP." *United States v. Mathews*, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020); *see also Adams v. Trate*, No. 1:20-cv-237, 2020 WL 7337806, at *2 (W.D. Pa. Dec. 14, 2020) (collecting cases); *United States v. Robinson*, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020) (noting that "the Court does not have the

---

[2] The United States Court of Appeals for the Third Circuit has determined that immigration detainees could proceed under § 2241 to challenge allegedly unconstitutional conditions of confinement due to the COVID-19 pandemic. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020). The Third Circuit cautioned that it was "not creating a garden variety cause of action." *Id.* at 324. In light of *Hope*, the Court "will assume, *without deciding*, that it has jurisdiction under § 2241, to consider a federal prisoner's COVID-19 related conditions of confinement claim." *Byrne v. Ortiz*, No. 20-12268 (RBK), 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020).

[3] The Court notes that Warden Spaulding, the Warden of USP-Lewisburg, denied Kachkar's request for compassionate release on June 26, 2020. (Doc. 1-1, p. 139-40). This Court, however, has no authority to consider a request for compassionate release in a § 2241 petition. *See United States v. Raia*, 954 F.3d 594, 596 (3d Cir. 2020) ("Section 3582's text requires [compassionate release] motions to be addressed to the sentencing court. . . ."); *see also Alexis v. Ortiz*, No. 19-1085, 2019 WL 2367034, at *2 (D.N.J. June 5, 2019). Kachkar must seek such relief from his sentencing court. *Id.* The Court observes that Kachkar has filed a motion for compassionate release with his sentencing court. *See United States v. Kachkar*, No. 1:16-CR-20595-DPG-1 (S.D. Fla.).

8

authority to grant [a request for home confinement] in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director"). Attorney General Barr "used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda." *Aigebkaen v. Warden*, No. 20-5732 (NLH), 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020).

The plain text of the CARES Act grants additional discretion to the Attorney General and the BOP; it does not require the BOP to release all at-risk, non-violent inmates on home confinement. Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all [the Court] must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The record reflects that Kachkar has a MEDIUM Security Classification and, as of the date of his comprehensive review, had only served approximately 14.7% of his imposed federal term and was greater than 18 months from his projected good conduct time release date. (Doc. 22-1, p. 40, Knepper Decl. ¶ 4). Consistent with the Attorney General's Memoranda, Kachkar is not a priority candidate for home confinement. Thus, Kachkar cannot demonstrate that the BOP's interpretation of the CARES Act is unreasonable as applied to him. Therefore, the Court cannot grant Kachkar's request to be released on home confinement.

**B.     Constitutional Claims**

In his § 2241 petition, Kachkar asserts that the conditions of confinement at USP-Lewisburg violate his constitutional rights under the First, Fifth, Sixth, and Eighth Amendments. (Doc. 1, p. 7; Doc. 2, pp. 27-28, 42-83). Kachkar maintains that officials at USP-Lewisburg stopped taking inmates' temperatures and there is no meaningful COVID-19 testing within the BOP and at USP-Lewisburg. (Doc. 2, p. 50; Doc. 33, p. 14). Kachkar asserts that he suffers from diabetes, hemochromatosis, depression, cholelithiasis, a reactive airway disease, allergies, and obesity. (Doc. 2, p. 2; Doc. 3, p. 7; Doc. 33, p. 15). He maintains that social distancing is impossible for incarcerated individuals and that many inmates refuse to wear masks. (Doc. 33, p. 13). Kachkar further asserts that USP-Lewisburg's failure to take adequate precautions causes COVID-19 to spread easily. (Doc. 2, p. 47). He also states that his allergies have worsened at USP-Lewisburg. (*Id.* at p. 58; Doc. 33, p. 13).

The Eighth Amendment guarantees a prisoner's right to be free from "cruel and unusual punishments" while in custody. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII)). An Eighth Amendment claim challenging conditions of confinement has two elements: (1) the deprivation asserted must be "sufficiently serious" to violate the Constitution, and (2) the prison official or officials responsible for the deprivation "must have a sufficiently culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994)). The second element can be proven by establishing that prison officials "acted with deliberate indifference to the inmate's health or safety or [to] conditions of confinement that violated the inmate's constitutional rights." *Id.* (citation omitted). Stated differently, prison officials must "both know of and disregard an excessive risk to inmate health or safety" or a violation of the inmate's constitutional rights. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

The Court "recognize[s] that the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No. 1:20-cv-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020). However, the "inability to practice social distancing is not, in and of itself sufficiently serious to implicate a violation of the Eighth Amendment." *See Engelund v. Doll*, No. 4:20-cv-604, 2020 WL 1974389, at *9 (M.D. Pa. Apr. 4, 2020). Nothing in the record suggests that USP-Lewisburg is not complying with the modified parameters of operation set forth *supra*. Despite Kachkar's complaints about the conditions of his confinement, the record reflects that Kachkar did not contract COVID-19. Moreover, Kachkar is no longer housed at USP-Lewisburg.

Furthermore, USP-Lewisburg has been testing for the COVID-19 virus. As of June 9, 2021, 679 inmates have been tested, 159 with positive results. *See* COVID-19 Coronavirus, https://www.bop.gov/coronavirus (select "Learn more about the data and view individual facility stats" hyperlink) (last accessed June 9, 2021). Staff members have also

been tested. *See id.* (select "Full breakdown and additional details" hyperlink and search for USP Lewisburg) (last accessed June 9, 2021). Finally, as of June 9, 2021, 214 staff members and 524 inmates at USP-Lewisburg have been fully vaccinated. *See id.* (select "Learn more about vaccinations and view individual facilities stats" hyperlink) (last accessed June 9, 2021). Thus, even when considering Kachkar's underlying health conditions, he has neither identified a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation nor has he established that officials at USP-Lewisburg have acted with deliberate indifference to his health or safety. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (noting that "a failure to eliminate all risk [does not] establish that the Government [has been] deliberately to [inmates'] serious medical needs"), *Rodriguez-Francisco*, 2020 WL 4260766, at *5 (concluding that habeas relief was not warranted because "officials [were] well aware of the COVID-19 pandemic and ha[d] taken numerous steps to mitigate the risk of infection and spread in their facility"). "[Kachkar] has not identified, let alone proven, any official conduct that exhibits deliberate indifference to the health or safety or prisoners during this unprecedented worldwide pandemic." *Id.* at *3. Kachkar, therefore, is not entitled to relief pursuant to § 2241.

Kachkar also alleges that he was denied equal protection of the law because he was not treated similarly to other BOP inmates. (Doc. 1, p. 7; Doc. 2, pp. 77-79). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside

of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

Kachkar does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). In the habeas petition, Kachkar asserts that other inmates were screened for COVID-19 and transferred to home confinement, but his request for home confinement was denied. (Doc. 1, p. 7; Doc. 2, pp. 77-78). At bottom, Kachkar alleges that he was treated differently than other inmates and he has thus failed to meet the threshold requirement of an equal protection claim because he did not allege differential treatment between himself and other similarly situated persons. Additionally, pursuant to the Attorney General's March 26, 2020 Memorandum, when determining whether home confinement should be authorized, the BOP must consider "the

totality of circumstances for *each individual inmate*." See *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed June 9, 2021) (emphasis added). Therefore, Kachkar is not entitled to relief pursuant to § 2241.[4]

## III. Conclusion

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June 10, 2021

---

[4] In addition, Kachkar's claims for declaratory and injunctive relief pertaining to his confinement at USP-Lewisburg have been rendered moot by his transfer to another facility. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").